IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MAYRA SAENZ,

Plaintiff,

vs.

OMAHA CATHOLIC SCHOOLS
CONSORTIUM,

Defendant.

**8:20CV225**

**MEMORANDUM & ORDER**

This matter is before the Court on defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 and NECivR 56.1, Filing No. 21. Plaintiff Mayra Saenz (hereinafter Saenz) was a science teacher with Omaha Catholic Schools Consortium and claims that she was wrongfully terminated. Saenz sued defendant alleging that she was discharged based on her race, religion, and disabilities in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1990, and the Nebraska Fair Employment Practices Act. 42 U.S.C. § 2000e; 42 U.S.C. §§ 12101; Neb. Rev. Stat. 48-1102. Defendant, Omaha Catholic Schools Consortium (hereinafter "the Consortium"), filed a motion for summary judgment, Filing No. 21, seeking judgment as a matter of law on all claims set forth in the Complaint, Filing No. 1. This Court recently dismissed all claims against two defendants, and the Omaha Catholic Schools Consortium is the only remaining defendant. *See* Filing No. 16.

I.      **BACKGROUND**

This action involves plaintiff Mayra Saenz's termination from the defendant's private religious school.  Saenz was hired as a science teacher at Holy Cross Catholic School in May of 2018 to begin teaching during the upcoming 2018-2019 school year. Plaintiff's duties began in early August of 2018.  Saenz understood that she was working for a Catholic school, however, she considered herself to be a non-denominational Christian despite having been raised Catholic.  Since her beliefs no longer aligned with the Catholic curriculum, Saenz asked to be exempt from teaching religious doctrine in her science classroom in favor of a more secular curriculum plan.  Her request was denied.

In August of 2018, before students arrived, Holy Cross Principal, Tawnya Mann, approved Saenz's curriculum plan that met the standards of both Nebraska State Science Standards and the Archdiocese of Omaha Catholic Schools' Next Generation Science Standards.  Saenz then met again with Mann after this curriculum was approved to express her discomfort in having her sixth-grade class dissect frogs if the specimens were lab grown.  Mann indicated that anatomy and physiology were to be included in the seventh-grade curriculum, thereby changing the curriculum for Saenz's sixth through eighth grade classes.  On August 31, 2018, Saenz spoke with Mann about the use of assistive technology, a smart watch, and how it would serve as an aid in meeting her work expectations, but the accommodation was denied by Mann.

On September 13, 2018, Saenz learned of a co-worker's family member that committed suicide.  This exacerbated the Saenz's depression and caused her to seek medical help.  Before doing so, Saenz reached out to her employer and informed them of

her mental health crisis.  The secretary informed Saenz that a substitute would be able to cover her classes.  The secretary then texted Saenz informing her that she was to have the next two days off from work to seek professional help and recover.  Saenz sent back assignments that her students should work on in her absence.  That same evening, Saenz returned to the school to speak with Mann and discovered that her building access had been revoked and email was deactivated.  Saenz provided Mann with a letter from her crisis therapist which stated that after the promised two days off, Saenz would be able to fully return to work.  Mann took the letter but did not open it.  Mann took Saenz's keys from her and told her that she was not in the right state of mind to perform her duties and that Saenz should take care of her personal life.  Mann then told Saenz she should resign, but that she would not be terminated.

On September 14, 2018, Saenz's therapist contacted Mann and was told that Mann did plan to terminate Saenz.  When Saenz declined to resign, she was terminated without being given any indication that her performance did not meet their standards. Saenz was sent a termination letter, which Saenz disputed and requested specific reasons for her termination.  A hearing was set with the Board of Directors for October 4, 2018.  During this meeting Mann gave her reasons for the plaintiff's termination and the plaintiff was not afforded time to respond to those allegations, since this was the first time she was learning of them.

Plaintiff filed a pro se complaint on June 12, 2020 seeking damages for lost wages. The plaintiff is claiming that the defendant engaged in employment discrimination and she was terminated based on her race, religion, and disabilities.  The plaintiff claims that her

termination violates the Civil Rights Act of 1964 and the Nebraska Fair Employment Practices Act.

## II.    STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  "Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint*, 736 F.3d 1134, 1136 (8th Cir. 2013).  "Summary judgment is not disfavored and is designed for 'every action.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 447 U.S. 317, 327 (1986)).  In reviewing a motion for summary judgment, the court will view "all evidence and mak[e] all reasonable inferences in the light most favorable to the nonmoving party." *Inechien v. Nichols Aluminum, LLC*, 728 F.3d 816, 819 (8th Cir. 2013.).  Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Torgerson*, 643 F.3d at 1042; and *see Briscoe v. City of St. Louis, Missouri*, 690 F.3d 1004, 1011 (8th Cir. 2012.) (stating that the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'").

Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not negate the nonmoving party's claims by showing "the

absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 325 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S 144, 159 (1986)).  Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.  In response to the movants showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.,* 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [nonmovant]. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)); *see Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (stating "[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment) (quoting *Anderson*, 477 U.S. at 247-48).  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  *Torgerson*, 643 F.3d at 1042.

## III.   DISCUSSION

The Consortium moves for summary judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on the claims raised by the plaintiff in the complaint, Filing No. 1.  The Consortium contends that there are no genuine issues of material fact and this Court does not have the authority to rule on employment discrimination claims when the teacher falls under the ministerial exception of the First Amendment's Religion Clauses, pursuant to the Supreme Court's recent opinion in *Our Lady of Guadalupe School v. Morrissey-Berru,*

140 S.Ct. 2049 (2020). The Consortium argues that Saenz fits into this exception because the defendant saw the Saenz's role as ministerial because she was "engaged in ministry carrying on the school's religious activities, teaching, modeling and promoting the Catholic religious principles for which the school is established and maintained." Filing No. 23. Saemz argues that she is not under the ministerial exemption, as she was not a minister to students nor did she have a formal religious title.

However, Saenz contends that this Court should find the Consortium as exempt from the First Amendment's ministerial exception because under the Ninth Amendment of the United States Constitution, "[w]hen it comes to the immediate safety, it is the duty of the state to protect human lives despite an organizations' exempt status." Filing No. 31 at 2. Additionally, Saenz argues that because the Consortium disregarded her emergent medical needs, their actions were a direct threat to human life. *Id.*

The ministerial exception of the First Amendment of the United States Constitution bars courts from adjudicating employment-based claims by certain employees against religious organizations. *Hosanna-Tabor Evangelical Lutheran Church & Sch. V. E.E.O.C.*, 565 U.S. 171 (2012) ("Both Religion Clauses bar the government from interfering with the decision of a religious group to fire one of its ministers."). The United States Supreme Court recently clarified *Hosanna-Tabor* extending it to other employees including Catholic school teachers, despite the teachers not having the formal title of "minister". *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020) ("Although these teachers were not given the title of "minister" and have less religious training than [the plaintiff in *Hosanna-Tabor*], we hold that their cases fall within the same rule that dictated our decision in *Hosanna-Tabor*.").

6

This Court analyzes the application of the ministerial exception by determining whether the employee carried out religious functions for the school through their assigned and performed duties. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2066 (2020). In holding that the ministerial exception applied to teachers in *Our Lady*, the Court stated of teachers and ministers that "they both performed vital religious duties". *Id.* The Court also stated that, "[e]ducating and forming students in the Catholic faith lay at the core of the mission of the schools where they taught". *Id.* The Court also noted that their "employment agreements and faculty handbooks specified in no uncertain terms that they were expected to help the schools carry out this mission and that their work would be evaluated to ensure that they were fulfilling that responsibility." *Id.* Teachers, like ministers, "were entrusted most directly with the responsibility of educating their students in the faith." *Id.* Additionally, the teachers in *Our Lady* were "obligated to provide instruction about the Catholic faith" and were also "expected to guide their students, by word and deed, toward the goal of living their lives in accordance with the faith." *Id.* [1]

Here, Saenz was responsible for not only teaching science to her students, but also conducting religious teachings, holding class prayers, and instilling Catholic values in the students. Filing No. 22, Ex. 1. The Consortium's Faculty Handbook outlined these duties for their teachers, including Saenz. *Id.* at 4. Despite having only worked at the

---

[1] *See e.g.*, *Our Lady of Guadalupe Sch. v. Morrissey-Berru,* 140 S. Ct. 2049, 2055 (2020) ("These cases require us to decide whether the First Amendment permits courts to intervene in employment disputes involving teachers at religious schools who are entrusted with the responsibility of instructing their students in the faith.") *Id.* at 2069 ("[w]hen a school with a religious mission entrusts a teacher with the responsibility of educating and forming students in the faith, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow."); *see also Ogugua v. Archdiocese of Omaha*, No. 8:07CV471, 2008 WL 4717121, at *5 (D. Neb. Oct. 22, 2008) ("[Plaintiff]'s claims of sexual harassment, race and national origin discrimination, and retaliation, are factually entwined and all relate to the adverse personnel actions which form the basis for [Plaintiff]'s claims for damages and other relief. [Plaintiff's claims] based on allegations of sexual harassment, race and national origin discrimination, and retaliation, all in violation of Title VII, must be dismissed.").

Consortium's school for a few weeks, Saenz participated in daily prayer with her students at least three times per day: in the morning, before lunch, and at the end of the day. *Id.* at 14. Saenz also attended weekly all school masses with her students, and she attended faculty faith development training sessions. *Id.* Additionally, when Saenz attempted to have her science class be under a more secular curriculum plan, she was denied outright. This denial makes it relatively clear that her teaching was to be, at least partially, based in religion in an effort to guide the students and help carry out the Consortium's religious based mission. These duties and tasks that Saenz performed as a teacher with the Consortium show that her role was ministerial in nature. Saenz does not deny that these were the duties she signed up to perform upon being hired and does not deny that she performed these duties in an effort to promote the Catholic religion to her students and advance the Consortium's goal and mission.

The Consortium also viewed Saenz's role as a teacher in a Catholic school, as ministerial. This is evidenced by the Faculty Handbook, which every employee, including Saenz, is required to view and sign. *Id.* at 5. The Consortium saw Saenz's role as one of religious development of its students and each faculty member is a part of living up to that mission. Filing No. 23 at 10. According to the Consortium's Faculty Handbook, "[t]o be a teacher in a Catholic school is to accept a call to ministry . . . Employee is engaged in ministry carrying on the school's religious activities and teaching, modeling and promoting the Catholic religious principles for which the school is established and maintained." Filing No. 22, Ex. 1 at 4.

Accordingly, the Court finds that the evidence submitted in connection with Saenz's employment with the Consortium and the undisputed facts of this case show that

the Consortium was a school with a religious mission which entrusted Saenz with the responsibility of educating and forming students in the Catholic faith. As such, judicial intervention into an employment dispute between Saenz and the Consortium by a secular court threatens the Consortium's religious independence in a way that is not allowed under the First Amendment of the United States.

THEREFORE, IT IS ORDERED THAT the defendant's motion for summary judgment, Filing No. 21, is granted. This case is dismissed. A separate judgment will be entered in accordance with this memorandum and order.

Dated this 29th day of April, 2021.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge